## UNITED STATES ex rel. GAUDIO v. COMMISSIONER OF IMMIGRATION OF PORT OF NEW YORK.

District Court, S. D. New York.
March 25, 1937.

Samuel Segal, of New York City, for relator.

Lamar Hardy, U. S. Atty., of New York City (John W. Knox, of New York City, of counsel), for respondent.

HULBERT, District Judge.

Umberto Gaudio was arrested April 13, 1936, upon a warrant issued March 5, 1936, which charged him with being: "* * * found in the U. S. in violation of the Immigration Act of May 26, 1924 [8 U.S.C. A. § 213(a)] in that at the time of your entry you were not in possession of a valid unexpired immigration visa."

After hearing, the immigration inspector recommended that the relator be deported to Italy, and this decision was affirmed by the Board of Review upon appeal and approved by the Department of Labor.

The proceeding is now before the court upon a writ of habeas corpus charging:

1. That the hearing was unfair and in violation of due process of law, in that the relator was denied the right of being confronted with the persons making the charge against him and, therefore, afforded no right to cross examination.

2. That the evidence adduced at the hearing was insufficient to sustain the charge set forth in the warrant.

It appears that the relator did have what purports to be a nonquota immigration visa apparently issued by the American Consular Service, Naples, Italy, November 9, 1927, No. 3402, signed in the name of Ernest E. Evans, Vice Consul, and which visa bore the seal of the American Consulate, the requisite stamps (cancelled) being attached thereto, and purports to have been granted upon a passport No. 2861 issued by Questor Salerno, Italy, on November 7, 1927; birth certificate, civil certificate, and police certificate.

At the hearing, the immigration authorities confronted the relator with an affidavit, verified August 26, 1935, by Coert du Bois, Consul General of the United States, at Naples, Italy, who stated therein:

"1. The official records of this office do not show that immigration visa No. 3402 was issued to Umberto Gaudio on Nov. 9, 1927 by the Consulate General at Naples, Italy.

"2. Nonquota immigration visa No. 3402 for the fiscal year ended June 30, 1928 was issued to Maria Cilieco on Nov. 9, 1927.

"3. The official records of this office do not show that a fee of $1 was collected, or that a $1 fee stamp was cancelled on Nov. 9, 1927 in connection with an application for an immigration visa made by anyone named Umberto Gaudio, or that a fee of $9 was collected, or that a $9 fee stamp was cancelled on Nov. 9, 1927, in connection with an immigration visa issued to anyone named Umberto Gaudio."

The following records were also introduced at the hearing: Record of arrival January 6, 1916; record of arrival February 23, 1928; certificate of circuit court of Kenosha county, Wis., showing that a declaration of intention to become a citizen was made in that court by the relator January 17, 1919.

The immigration authorities depend upon inconsistencies in the record (not specifically referred to) to support their contention that the visa in question is not genuine or rightfully possessed by the relator.

A careful analysis of the record reveals that these inconsistencies fall into two classes, viz., those attributable to the relator, and those contained in the Immigration Department's records.

Considering the former class, there are:

(1) *Conflicting birth dates of the relator.*

The relator testified he was born November *15*, 1892, whereas his application for the visa in question and his declaration of intention to become an American citizen, both give his birth date as November *12*, 1892. He was not asked to explain this conflict and I feel that it is of slight importance.

(2) *Previous residences in the United States.*

The relator testified he had been twice previously in the United States, first coming in 1910 and staying about three years, and again in January, 1916, and remaining about five years, and had remained in Italy from 1921 to 1928. His application for a visa dated November 9, 1927, stated he had resided in Mendicino from birth to 1920, New York 1920 to 1927, and Laurino from 1927 to date (November 9, 1927).

The record of his arrival on February 23, 1928, showed him to have been in the United States from 1920 to 1927. He gave no explanation of this discrepancy, except that he did not know what was in the application for the visa.

(3) *Alleged Uncle—Biagio Caputo.*

The application stated that the relator intended to join a relative, Biagio Caputo, on arrival at New York, and the record of arrival February 23, 1928, gave the name Biagio Caputo, uncle, 264 East 112 street, New York City, as the relative or friend he was to join.

He testified he had no uncle of that name and knew no one of that name. Although the relator's mother's name before marriage was Rosina Caputo, he was not interrogated further on this point.

(4) *Circumstances surrounding the issuance of the visa.*

The relator was questioned at some length regarding the circumstances surrounding the issuance of the visa. While a little hazy on some details, it must be remembered the occasion in question was 8½ years before the hearing. The immigration inspector concluded that it was obvious that the relator did not obtain the purported visa in the office of the American Consul as he was not familiar with the regular procedure of obtaining visas.

■ The United States attorney again urges this point as having great weight, although nowhere in the *record* is there any proof as to what the regular procedure is. It is too well settled to require citation of authority, that the court, in considering any writ of habeas corpus, is bound by the record before it and cannot consider facts extrinsic thereto.

Considering now the inconsistencies in the Immigration Department's records, there are:

1. *Records of heighth.*

The arrival record of January 6, 1916, shows 5' 3"; that of February 23, 1928, 5' 4"; although the application for the visa for that visit then examined by the inspector showed 5' 9". Curiously enough at the hearing on April 13, 1936, he was listed as 5' 10".

2. *Color of hair, eyes and complexion.*

The arrival record of January 6, 1916, shows, *brown* hair, *brown* eyes, and *reg.* complexion; that of February 23, 1928, shows, *brown* eyes, *brown* hair, *nat.* complexion; the application of November 9, 1927, shows, *brown* hair, *brown* eyes, *dark*

complexion. On the hearing of April 13, 1936, he was listed as having *black-gray* hair, *brown* eyes, *dark* complexion; while his declaration of intention of January 17, 1919, shows *black* hair, *brown* eyes, and *dark* complexion.

3. *Record of identifying marks.*

The arrival records of January 6, 1916, and February 23, 1928, both show *no* marks of identification, while the application of November 9, 1927, shows scar on left jaw, chin, and forehead. The record of the hearing on April 13, 1936, shows *first two joints of index finger left hand amputated,* scar on left temple, large scar on left cheek, large scar on chin, mole on left cheek, and mole under right eye.

As far back as January 17, 1919, in his declaration of intention the relator had for marks of identification, *first finger of left hand off, second joint,* and scar on left side of face.

It seems strange that the departmental records which were made by visual examination of the relator should vary on such noticeable marks as these.

After a careful review of all the inconsistencies listed, I do not feel that they justify the Department's deportation order.

The only other evidence relied upon by the Department is the affidavit of the Consul General at Naples. The relator contends that the affidavit is inadmissible, being ex parte, but, in any event, is insufficient. With the latter contention I agree.

It does not appear that the record of the items enumerated in paragraphs 1 and 3 of the affidavit were separately kept or that a record does exist with respect to the payment of fees and affixing of stamps to passport No. 3402 in the name of Maria Cilieco. Nor does it appear whether any fees were paid and stamps affixed to a visa issued in the name of Umberto Gaudio between November 7, 1927, and February 7 or 8, 1928, the date upon which the relator sailed from Naples to New York.

There is nothing in the case to show whether the visa issued to Maria Cilieco was canceled, and that another visa under the same number, or any other number, was not issued to the relator in February 1928 as claimed by him, or at any other time between the date of his application for a visa and the date when he sailed from Italy with a visa in his possession.

No proof at all was submitted on the question whether or not the signature of the Vice Consul appearing on the visa was forged.

The United States attorney urges that the Consul General's affidavit may be regarded as stamped with every guaranty of truth, good faith, and accuracy. Conceding that to be true, does not the same apply to the visa bearing, as it does, all apparent indicia of authenticity?

If the visa in question is, in fact, fraudulent (as to which I express no opinion), the immigration authorities have facilities for establishing that.

On the record before me I feel that the proof is insufficient, and the writ will be sustained. Settle order on two days' notice.